# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

MIRA NIKOLIĆ,                              )
                                           )
      Plaintiff,                      )
                                           )
      v.                              )          CAUSE NO.:  2:10-CV-406-PRC
                                           )
ST. CATHERINE HOSPITAL, INC.,              )
                                           )
      Defendant.                      )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 44], filed by Defendant St. Catherine Hospital, Inc., on December 21, 2012, and Defendant's Objection and Motion to Strike Portion of Plaintiff's Summary Judgment Exhibit H (Plaintiff's Affidavit) [DE 61], filed by Defendant on February 6, 2013.  Both Motions have been fully briefed and are appropriately before the Court for ruling.

## PROCEDURAL BACKGROUND

On November 2, 2009, Plaintiff Mira Nikolić filed a Charge of Discrimination with the EEOC and the Indiana Civil Rights Commission alleging discrimination based on national origin. She received a right to sue notice on July 13, 2010.  On October 12, 2010, Plaintiff, proceeding *pro se*, filed a Complaint alleging workplace discrimination on the grounds of national origin under Title VII of the amended Civil Rights Act of 1964.

On September 28, 2011, the Court denied Defendant's motions for more definite statement and dismissal for failure to prosecute, but granted Defendant's motion to dismiss Plaintiff's tort claim stemming from an alleged June 2008 assault.  On October 10, 2011, Defendant filed an Answer.  On November 9, 2011, counsel entered their appearance on behalf of Plaintiff.

On April 12, 2012, Plaintiff filed, with leave of Court, an Amended Complaint adding a state law claim for negligent retention and supervision. On May 1, 2012, Defendant filed an Amended Answer to Plaintiff's Amended Complaint.

On December 21, 2012, Defendant filed the instant Motion for Summary Judgment. On January 10, 2013, Plaintiff filed a response, and on January 30, 2013, Defendant filed a reply. On February 6, 2013, Defendant filed the instant Motion to Strike. On February 11, 2013, Plaintiff filed a response, and on February 18, 2012, Defendant filed a reply.

The parties orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting

3

materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MOTION TO STRIKE

Defendants argue that several statements contained in Plaintiff's Affidavit, submitted as Exhibit H to Plaintiff's response, should be stricken because they are inadmissible. Plaintiff argues that Defendant requests improper relief, and should rather be requesting that the Court disregard inadmissible evidence. Plaintiff also argues that the statements in her Affidavit are admissible and properly supported.

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters

stated." Fed. R. Civ. P. 56(c)(4).  The Federal Rules of Evidence further provide, in relevant part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  Hearsay, which is defined as a declarant's out-of-court statement that a "party offers in evidence to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(a)(c), is not admissible unless allowed by statute, the Federal Rules of Evidence, or other rules created by the United States Supreme Court, *see* Fed. R. Evid. 802.

The Seventh Circuit has found that the following types of statements should be disregarded: "(1) [C]onclusory allegations absent supporting evidence; (2) legal argument; (3) selfserving statements without factual support in the record; (4) inferences or opinions not 'grounded in observation or other first-hand experience;' and (5) mere speculation or conjecture." *Paniaguas v. Aldon Cos.*, No. 2:04-CV-468, 2006 WL 2568210, *4, 2006 U.S. Dist. LEXIS 63321, *14-15 (N.D. Ind. Sept. 5, 2006) (citations omitted) (quoting *Moore v. Ashland Inc.*, No. IP-99-1173-C-T/G, 2000 WL 1672747, at *1, 2000 U.S. Dist. LEXIS 16337, at *3 (S.D. Ind. Oct. 30, 2000)) (listing cases). In addition, statements or conclusions that contradict prior deposition or other sworn testimony without explaining the contradiction or attempting to resolve the disparity are not properly included in an affidavit.  *LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 908 (7th Cir. 2010); *Snyder v. Livingston*, No. 1:11-CV-77, 2012 WL 1493863, at *1, 2012 U.S. Dist. LEXIS 59193, at *4 (N.D. Ind. Apr. 27, 2012).

Defendant objects to several specific statements in Plaintiff's Affidavit.  The Court will consider each in turn.

Paragraph 8 of Plaintiff's Affidavit contains a general introduction followed by subparagraphs describing specific examples of the harassment Plaintiff claims "intefere[d] with [the] performance of [her] job duties so as to substantially make them more difficult." Pl. Resp., Exh. H, ¶ 8. Defendant objects to the introductory paragraph for lack of specificity and objects to several of the examples of harassment in the subparagraphs for lack of personal knowledge. In particular, Defendant argues that Plaintiff does not state how she knew that her coworkers turned off the oven and stove burners and that she does not establish how she knew that coworkers switched or hid ingredients. Plaintiff argues that, while it would be appropriate for Defendant to challenge Plaintiff's means of obtaining the information at trial, requiring a recitation of every sensory perception leading to her conclusions would extend the requirements of Rule 602 to absurdity.

Non-expert witnesses "are permitted to testify only from their personal knowledge. Testimony about matters outside their personal knowledge is not admissible . . . in an affidavit used to support or resist the grant of summary judgment." *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (citing Fed. R. Evid. 602; Fed. R. Civ. P. 56(e)) (other citation omitted). The Seventh Circuit recognizes that "'personal knowledge' includes inferences -- all knowledge is inferential -- and therefore opinions." *Id.* (citation omitted). However, in order to be admissible, "the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Id.* (citations omitted); *see also United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000) ("[A]lmost all testimony, even testimony as to what one has seen, is inferential in the sense that a reasoning process, however rudimentary, is being applied to the raw sense data. But the inferences must be tethered to perception, to what the witness saw or heard.")

(citation omitted); *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990) ("All knowledge is inferential, and the combined effect of Rules 602 and 701 is to recognize this epistemological verity but at the same time to prevent the piling of inference upon inference to the point where testimony ceases to be reliable.") (citations omitted).

In this case, Defendant is essentially questioning how Plaintiff could have known that other employees were sabotaging her behind her back, although the very nature of the conduct she is describing is that it was done in secret, without giving her the opportunity to directly witness it. The Court notes that Plaintiff's affidavit is scarce regarding the details about how she reached her conclusions that coworkers were manipulating her workspace behind her back, and at trial Defendant is certainly entitled to challenge the inferences that led her to those conclusions. The inferences that she drew are not mere rumors about matters remote from her experience, and, although the affidavit is not replete with detail, the information included is "within the range of [Plaintiff's] personal observation." *Santos*, 201 F.3d at 963. The Court will not here require that Plaintiff must lay out each and every step leading to her conclusions in this paragraph.

Defendant also challenges three paragraphs that begin with the phrase "whenever I would complain to [a supervisor] . . ." and then describe the responses Plaintiff claimed to received from each supervisor. Pl. Resp., Exh. H, ¶¶ 10, 11, 12. Defendant argues that these statements cannot be based in Plaintiff's personal knowledge because Plaintiff is not omniscient and was not privy to every conversation each of her supervisors had with other people. Defendant's argument assumes that Plaintiff is using the word "whenever" to mean "[a]t any time when; every time that, as often as," *Whenever Definition*, OED Online, Oxford University Press, http://www.oed.com/view/Entry/228204 (last visited July 10, 2013); however, the Court notes that

some English speakers use a "punctual *whenever*" that "can be paraphrased by 'at the moment that, at the time when, as soon as.'" Michael B. Montgomery & John M. Kirk, *"My Mother, Whenever She Passed Away, She Had Pneumonia" The History and Functions of* whenever, 29 J. Eng. Ling. 234, 235 (2001). Particularly given that Plaintiff is not a native English speaker, the Court is hesitant to exclude portions of her affidavit because of strict grammatical assumption. Accordingly, the Court will construe Plaintiff's statements to be describing specific scenarios within her knowledge, consistent with the use of the "punctual whenever." To the extent that Plaintiff is asserting the truth of things that happened outside her knowledge, such as assuming she knew the context of every conversation between a supervisor and her co-workers, the Court disregards these statements and does not include them in the citation of facts below.

Defendant also objects to Paragraph 13: "Bill [Mendoza] would respond to Brenda [Molina]'s reports (as described in paragraph 12, above) by simply telling my coworkers to stop their behavior, without taking any further action." Pl. Resp., Exh. H, ¶ 13. Defendant argues that Plaintiff fails to show that she has personal knowledge of all of Mendoza's actions and that she fails to establish that she heard or saw Mendoza make any statements to her coworkers. Plaintiff does not address this objection specifically, but argues that, while this type of objection goes to the weight of Plaintiff's testimony, it does not mean that Plaintiff has no personal knowledge of the events she describes. The Court will disregard Plaintiff's statement in Paragraph 13 to the extent that it asserts knowledge of all conversations between Mendoza and other people or all actions taken by Mendoza, and will limit the statement to those conversations Plaintiff has personal knowledge of.

The material facts laid out below, in the light most favorable to Plaintiff, the non-moving party, do not include any of the above excluded statements.

8

## MATERIAL FACTS

Plaintiff began working for Defendant St. Catherine Hospital, Inc., as a food service worker on October 15, 2004.  She was promoted to the position of cook on August 14, 2005, and remained in that position until Defendant terminated her employment on July 21, 2009.  She was the only employee of Serbian origin working in Defendant's food department, and Serbian is her primary language, although she has some understanding of English.

Ronald Jerzyk served as the Director of Human Resources during Plaintiff's tenure as an employee of Defendant.  He was responsible for maintaining employee files and records, investigating employee misconduct, and enforcing Defendant's employment policies, and made the final decisions about whether to terminate employees who violated work rules and policies.  William Mendoza was director of Plaintiff's department and was responsible for department supervision, including hiring, investigation of employee misconduct, and reviewing employee termination.  Mendoza was responsible for department supervisors Geneva Patterson, Brenda Molina, and Linda McGuire.  These supervisors were responsible for managing daily operations in the department and assisted Mendoza with hiring decisions.

Defendant had a written Corrective/Disciplinary Action Policy, available to all employees in paper form and through the hospital intranet.  The Policy laid out the standards of conduct and method of termination.  It provided for progressive discipline for less serious offenses depending on the nature and frequency of the infractions, including the issuance of written corrective actions.  More severe offenses could result in immediate termination following an investigation.

Defendant evaluated Plaintiff's job performance annually.  On September 27, 2007, Plaintiff received a performance review noting areas for improvement but rating her overall as "meets or

exceeds standards to warrant pay increase." On October 29, 2008, Plaintiff's performance review showed that she met standards in most of the job responsibility categories and again received a pay increase.

Patterson was the shift manager who was most often Plaintiff's immediate supervisor. Plaintiff asserts that Patterson and several of Plaintiff's coworkers, including Harry Campbell, Ethel Clark, Mattie Clark, Talvin Hobbs, and Denise James, treated her poorly, making derogatory comments about her national origin and interfering in her duties by doing things like turning off ovens and hiding or switching ingredients.

On July 4, 2008, Plaintiff submitted a letter to Jerzyk complaining that she was being subjected to poor treatment by other employees. In particular, she described two physical altercations. In the first incident, a coworker referred to as Jill punched Plaintiff, and, despite Plaintiff's complaints, did not appear to receive any discipline from Linda, their supervisor. On the second occasion, she was splashed in the face with hot water by a coworker she refers to as Telvin. Jerzyk conducted an investigation of the allegations but did not issue any corrective actions or discipline anyone.

Plaintiff reports several ongoing instances of harassment without indicating the approximate dates on which they occurred. She describes Patterson and Campbell making derogatory comments about Serbians to Plaintiff in front of her other coworkers, stating that "Serbs are aggressive" and including Plaintiff in their references to Serbians as "killers and stealers." Sometimes Hobbs joined in the taunting. When she spoke in Serbian, her native language, Ethel Clark mocked her by speaking in gibberish and making gestures. Ethel Clark continued the harassment even after she saw Plaintiff crying. On one occasion, Plaintiff was crying at work after receiving personal news, and

10

Patterson, Hobbs, and Ethel Clark laughed at her, saying that because she was Serbian she was a nobody.  Plaintiff heard Patterson tell James that she would terminate James's employment if James did not cause problems for Plaintiff.  Ethel Clark, Campbell, and Hobbs would also sabotage Plaintiff's work in the kitchen, turning off the oven or stove burners Plaintiff was using, hiding ingredients, and switching ingredients.

On a day remembered by Plaintiff as the Martin Luther King Day after the election of President Obama, presumably January 19, 2009, Plaintiff was the only white employee working in the hospital cafeteria.  Patterson made comments to Plaintiff about past abuses suffered by black people at the hands of whites, saying that "there was enough of the time that the black people were working or being abused by white.  Obama came now, and now we are going to make you whites do that."  Pl. Ex. H, Pl. Dep. 47:1-6.

On December 5, 2008, Plaintiff received a corrective action for parking in the emergency room parking lot rather than in her assigned parking area.  She claims that she was running late because a crime scene blocked access to the employee parking lot.  As she entered to clock in she met Patterson standing on the stairway and Patterson directed her to prepare some food immediately.  Plaintiff asked if she could leave her car in the emergency lot long enough to perform the task and then park it properly later, and Patterson agreed. Despite Patterson's permission, Plaintiff later received a corrective action for parking in the emergency lot.  The document states that Plaintiff refused to sign it, but Plaintiff reports that she only received a verbal warning from Jerzyk at the time of the incident and did not see or receive a copy of the corrective action until June or July of 2009.

On May 28, 2009, Plaintiff sought to get a piece of cake from Mattie Clark at a workplace

event but Mattie Clark told her she could not have any cake. Plaintiff began crying and accused Mattie Clark of stealing food. Mattie Clark became upset and screamed at Plaintiff. Other employees reported hearing Plaintiff using profanity during the altercation, but Plaintiff denies using vulgar language, in either Serbian or English, at this or any other time. On June 1, 2009, Patterson, who had not witnessed the May 28 incident, issued a corrective action to Plaintiff for the incident and suspended her from June 2 to June 5, 2009. On June 8, 2009, Plaintiff submitted a written statement to Jerzyk and Mendoza denying the use of profanity and denying any misconduct. On June 23, 2009, Plaintiff met with Jerzyk and Mendoza and, through a translator, again asserted that she did not use vulgar or abusive language. Mendoza and Jerzyk decided that the corrective action would be upheld.

On June 27, 2009, Plaintiff arrived for work shortly before 9:00 a.m. and worked alone until around 11:00 a.m. She reports that a student volunteer was exiting as she arrived and held the door for her, so she did not use her key card to enter the building. At about 9:53 a.m., Plaintiff went to the exterior door to look for Campbell outside, and used her key card to reenter. When McGuire arrived at work, Plaintiff told her that the computer had not allowed her to clock in when she arrived at 9:00, and McGuire assured her that she would enter the clock-in time. When Plaintiff later noticed that she had not been clocked in until 9:45 a.m., she spoke to Patterson about it. She also asked McGuire about the discrepancy, and recalls that McGuire said someone else told her to enter that time because Plaintiff would be the next one to be fired. On July 15, 2009, after an investigation by Jerzyk and Mendoza, Plaintiff was issued a corrective action for her late arrival. On July 21, 2009, Plaintiff was terminated.

**ANALYSIS**

12

Defendant moves for summary judgment on Plaintiff's claims for national origin discrimination under Title VII and her state law claim for negligent retention and supervision. The Court considers each claim in turn.

## A.      Title VII

Title VII prohibits discrimination in employment based on race or national origin: "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."   42 U.S.C. § 2000e-2(a)(1).    To prove a case of discrimination under Title VII, a plaintiff must offer either direct or indirect evidence of discrimination.   *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005). Regardless of the method, the burden is always on the plaintiff to demonstrate that genuine issues exist for trial.  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003).  For Plaintiff to survive summary judgment using the direct method, she must "put forth evidence that demonstrates that she was a member of a protected class and '*as a result* suffered the adverse employment action of which [s]he complains.'"  *Burks v. Wis. DOT*, 464 F.3d 744, 759 n.3 (7th Cir. 2006) (quoting *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 902 (7th Cir. 2006) (emphasis in original).  She can present either "an admission by the decision-maker that his actions were based upon the prohibited animus." or "construct[] a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'"  *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)).

Defendant agrees that Plaintiff belongs to a protected class and that she suffered adverse

employment actions.  Defendant argues that only two of the three corrective actions Plaintiff received were adverse employment actions and disputes that the adverse actions were as a result of her national origin.

      1.    <u>Adverse Employment Actions</u>

Plaintiff argues that all three of the corrective actions she received were adverse employment actions.  Defendant argues, however, that only the last two of the three corrective actions Plaintiff received were adverse employment actions under Title VII.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  "[A]dverse actions must be materially adverse to be actionable, meaning more than a 'mere inconvenience or an alteration of job responsibilities.'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank*, 993 F.2d 132, 136 (7th Cir. 1993)); *see also de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008).  "There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action; otherwise every reprimand or attempt to counsel an employee could form the basis of a federal suit."  *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004); *see also Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) ("[T]he corrective action alone does not rise to the level of an adverse employment action."); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (concluding that although the plaintiff's "negative evaluation, written warnings, and placement on 'proof status' are putatively disciplinary measures, none 'resulted in tangible job consequences and therefore are not adverse employment actions'") (quoting *Longstreet v. Ill. Dep't*

*of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002)) (other citations omitted); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) ("[N]egative performance evaluations, standing alone, cannot constitute an adverse employment action.").

Plaintiff argues that because all three corrective actions led to Plaintiff's eventual termination, all three corrective actions were adverse employment actions. The third corrective action, issued July 15, 2009, led directly to her termination. The second corrective action, issued June 1, 2009, caused Plaintiff to be suspended for three days. Both of these corrections "resulted in tangible job consequences" and were therefore adverse employment actions under Title VII. *Longstreet*, 276 F.3d at 384. The first corrective action, issued December 5, 2008, did not have any immediate negative effect on Plaintiff's employment and therefore was not an adverse employment action. *See, e.g., Oest*, 240 F.3d at 613 (concluding that reprimands were not adverse employment actions because, although "each oral or written reprimand brought [the plaintiff] closer to termination[,] [s]uch a course was not an inevitable consequence of every reprimand . . . [and] [plaintiff] has not pointed to any immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities"); *Sweeney,* 149 F.3d at 556 ("Absent some tangible job consequence accompanying [the] reprimands, we decline to broaden the definition of adverse employment action to include them.").

Accordingly, only the second and third corrective actions, of June 1, 2009, and July 15, 2009, were adverse employment actions for the purposes of Plaintiff's claims, because only these two led to the immediate job consequences of suspension and termination.

2.      <u>Evidence of Discrimination</u>

Defendant's arguments focus on the indirect, burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), for proving discrimination. *See, e.g., Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845 (7th Cir. 2007); *Cambridge Indus.*, 325 F.3d at 896-97. Plaintiff argues that she can succeed under either the direct or the indirect method, so the Court will first examine her arguments under the direct method of proof.

Direct evidence of race discrimination is evidence that would prove discriminatory conduct on the part of the employer without reliance on inference or presumption as perceived by the trier of fact. *Rozskowiak*, 415 F.3d at 612. Direct evidence can take two forms: (1) an outright admission by the decision maker that the challenged action was undertaken, or (2) circumstantial evidence of a discriminatory reason by the employer. *Id.*; *Rogers*, 320 F.3d at 753.

Defendant argues that Plaintiff cannot establish an admission by decision makers that the corrective actions Plaintiff received were based on her national origin, and that she has failed to produce sufficient circumstantial evidence of discriminatory animus. Plaintiff argues that her direct supervisor, Patterson, made derogatory statements about Serbians and failed to discipline Plaintiff's co-workers for their mocking statements about Plaintiff's national origin. Plaintiff argues that, although Patterson did not make the decision to terminate her, the decision was made by Jerzyk and Mendoza in reliance on corrective actions in which Patterson was directly involved.

Plaintiff does not claim that Jerzyk and Mendoza, the people ultimately responsible for her adverse employment actions, harbored an illegal racial animus. She appears instead to be proceeding under what is known as the "cat's paw" theory. Under this theory, "an employer may be liable for employment discrimination if a nondecision-maker 'performs an act motivated by [discriminatory] animus that is *intended* . . . to cause an adverse employment action, and . . . that act

16

is a proximate cause of the ultimate employment action.'" *Harris v. Warrick Cnty Sheriff's Dep't*, 666 F.3d 444, 448 (7th Cir. 2012) (emphasis in original) (quoting *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1193 (2011)). In the Seventh Circuit, Plaintiff can succeed using a "cat's paw" theory if she can "demonstrate some causal connection between [her immediate supervisor]'s bias and [the ultimate decision-maker]'s decision to terminate her employment," a connection that is made if she "is able to show that the biased employee had some degree of influence over the ultimate decision." *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011).

Plaintiff argues that she only received the first corrective action because Patterson told her she could leave her car in the emergency room parking lot while she completed a task for Patterson. She argues that the second corrective action was signed by Patterson, although she was not in the kitchen during the altercation that gave rise to the corrective action, and that Patterson was the only management person that Plaintiff had contact with regarding that corrective action. She argues that Patterson changed Plaintiff's clock-in time to reflect a late arrival on June 27, 2009, and this late arrival resulted in the third corrective action and was itself a terminable offense.

Plaintiff cannot show causation "if the unbiased decisionmaker conducts a meaningful and independent investigation of the information being supplied by the biased employee." *Schandelmeier-Bartels*, 634 F.3d 383-84. However, "if the independent investigation relies on facts provided by the biased supervisor – as is necessary in any case of cat's-paw liability – then the employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor." *Staub*, 131 S. Ct. at 1193-94.

Defendant argues that there was an investigation into the incidents that led to the challenged employment actions. Defendant emphasizes the response to the incident that led to Plaintiff's

17

termination, arguing that Jerzyk and Mendoza accessed the video and log of electronic door access to ascertain that Plaintiff used her electronic keycard to open the door at about 9:53 a.m. on June 27, 2009. Plaintiff argues that Jerzyk relied on Patterson's statement about Plaintiff's arrival time and did not investigate earlier surveillance footage to see if she had entered earlier without using her keycard, as she claimed.

Plaintiff also argues that she was the only person given a corrective action for the altercation with Mattie Clark in the kitchen, despite the fact that both women were involved, and that the corrective action was given by Patterson despite the fact that she was not present for the altercation. Although Jerzyk and Mendoza obtained written statements from the other people present during the May 28, 2009, altercation in the kitchen, Plaintiff notes that several of the witnesses were those who had participated in harassment along with Patterson.

There is a genuine dispute of material fact as to whether the investigations were sufficiently independent to isolate Defendant from Plaintiff's charge that Patterson's animus influenced the adverse employment actions, including her termination.

Because there is a genuine dispute of fact as to whether Plaintiff can succeed on her Title VII claims under the direct method, summary judgment on these claims is inappropriate and the Court need not consider whether she can also avoid summary judgment using the indirect method.

3.   Hostile Work Environment

Plaintiff also claims that she was subject to a hostile work environment. Defendant argues that Plaintiff cannot demonstrate that she was exposed to severe and pervasive conduct sufficient to rise to the level of a hostile work environment.

An employee is subjected to a hostile work environment "[w]hen the workplace is permeated

18

with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  "An objectively hostile work environment is one that a reasonable person would find hostile or abusive."  *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). A successful "hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability."  *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005); *see also Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010).  Some factors that the Court may consider in determining if Plaintiff's work environment was hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Forklift Sys.*, 510 U.S. at 23; *see also Mendenhall*, 419 F.3d at 691-92 (same).  "To establish a hostile work environment, [the plaintiff] must show that the level of hostility she endured was 'hellish.' . . .  Merely unpleasant or boorish behavior is not prohibited by the law."  *Ptasnik v. City of Peoria*, 93 Fed. Appx. 904, 909 (7th Cir. 2004) (quoting *Rogers*, 320 F.3d at 752) (citing *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001)).

The Court notes that Defendant did not include any argument about Plaintiff's hostile work environment claim in its opening brief.  Generally, arguments raised for the first time in a reply brief are deemed waived.  *Holman v. Indiana*, 211 F.3d 399, 405 n.5 (7th Cir. 2000); *see also Edwards*

*v. Honeywell, Inc.*, 960 F.2d 673 (7th Cir. 1992) (finding that the district court was precluded from granting summary judgment on a ground raised only in a reply brief because the plaintiff had an inadequate opportunity to respond); *McKay v. Town and Country Cadillac, Inc.*, 97 C 2102, 2002 WL 664024, *8 2002 U.S. Dist. LEXIS 7724, *26 n. 5 (N.D. Ill. Apr. 23, 2002) (refusing to rule on an issue raised for the first time by the defendant in the reply brief when the issue was anticipated in the response brief by overly-cautious plaintiff); *cf. Wagner v. Magellan Health Servs., Inc.*, 121 F. Supp. 2d 673, 680 (N.D. Ill. 2000) (addressing issue raised for first time by defendant in reply brief because issue was fully briefed by plaintiff in response brief); *see also Kronstedt v. Equifax*, No. 01-C-0052-C, 2001 WL 34124783, at *19 (W.D. Wis. Jan. 25, 2001) (same).

Plaintiff raised her hostile work environment claim in her response brief, but Defendant's reply raises new arguments that are not addressed by Plaintiff.  First, Defendant argues that Title VII's 300-day statute of limitations excludes some of Plaintiff's allegations.  In its opening brief, Defendant only raised the two year statute of limitations applicable to Plaintiff's state law tort claims.  Although the Court notes that Title VII's statute of limitations may indeed exclude some of the incidents Plaintiff describes as harassing, Plaintiff has not had the opportunity to address this argument.  Also for the first time in its reply brief, Defendant raises the argument that Plaintiff has not linked her claims of harassment to her Serbian heritage.  In its opening brief, Defendant argued that the corrective actions were not taken on the basis of Plaintiff's national origin and that the supervisors with the authority to terminate Plaintiff were not motivated by discriminatory animus, but Plaintiff has not been given a chance to address Defendant's argument that she cannot establish a link between the harassment directed against her and her membership in a protected class.

Because Plaintiff has not had the opportunity to fully address Defendant's arguments about

20

her hostile work environment claim, neither will the Court address them.  The Court will not grant summary judgment in favor of Defendant on Plaintiff's claim that she was subjected to a hostile work environment in violation of Title VII.

**B.      State Law Claim for Negligent Retention and Supervision**

Under Indiana law, a claim of negligent supervision and retention requires proof that the defendant knew that the employee was in the habit of engaging in misconduct dangerous to others. *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 710 F. Supp. 2d 762, 772 (N.D. Ind. 2010); *Levinson v. Citizens Nat'l Bank*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994).  Some courts in Indiana find "that an employer may be liable if it merely should have known or had reason to know of the misconduct."  *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 609-10 (7th Cir. 2008) (listing cases).  The tort of negligent hiring and supervision is inapplicable when an employee is acting within the scope of employment.  *Clark v. Aris, Inc.*, 890 N.E.2d 760, 763, 765 (Ind. Ct. App. 2008) (applying Restatement (Second) of Torts § 317 (1965)).

Defendant argues that Plaintiff has not identified tortious injuries caused by specific people outside the scope of their employment and that many of Plaintiff's complaints are barred by the applicable two year statute of limitation.  Plaintiff agrees that any claims that arose before October 12, 2008, are time barred but argues that much of the complained-of conduct occurred after that date and did not cease until her termination.

Plaintiff argues that the letter she wrote to Defendant on July 4, 2008, put Defendant on notice of the harassment she was suffering, and claims that she continued to complain to supervisors about her treatment after that time.  The letter describes two instances when coworkers, referred to as Jill and Telvin, physically harassed Plaintiff.  The letter also complains that Linda, the workers'

supervisor, did not appear to discipline Jill, despite Plaintiff's complaints.  Plaintiff admits that the incidents described in the letter are themselves barred by the statute of limitations, but argues that the letter demonstrates that Defendant knew or had reason to know that she was suffering ongoing harassment at the hands of her coworkers.

In particular, Plaintiff contends that the conduct of Patterson, Campbell, Hobbs, Ethel Clark, and Mattie Clark was so outrageous that the mental and psychological harm she suffered were foreseeable.  She does not specifically identify the instances of misconduct that she asserts forms the basis of her tort claim, although her affidavit, brief, and statement of facts are peppered with allegations of harassment, including descriptions of several specific occasions when Plaintiff was harassed by her coworkers.  However, Plaintiff fails to give even an approximate date of most of these incidents, and does not provide enough information from which the Court can determine whether they occurred within the time frame of the applicable statute of limitations.

Two of the incidents described by Plaintiff clearly fall within the statute of limitations: Plaintiff describes racially charged comments made by Patterson on a Martin Luther King Day following the election of President Obama and describes Mattie Clark coming towards her with a knife during their altercation on May 28, 2009.  However, the July 4, 2008, letter does not refer to any action by Patterson or Mattie Clark and therefore could not have given Defendant reason to know of their propensity for misconduct.

"[S]ummary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Cambridge Indus.,* 325 F.3d at 901 (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir.1999)).  Plaintiff has failed to demonstrate any proof that Defendant knew or should have known

that any particular employee was in the habit of engaging in tortious misconduct that would result in mental or psychological harm to Plaintiff.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's state law claim for negligent supervision and retention.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS in part** Defendant's Objection and Motion to Strike Portion of Plaintiff's Summary Judgment Exhibit H (Plaintiff's Affidavit) [DE 61] and **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment [DE 44]. The Court **GRANTS** summary judgment in favor of Defendant as to Count II, Plaintiff's state law claim for negligent retention and supervision.  Count I, Plaintiff's claims of National Origin Discrimination in violation of Title VII, **REMAIN PENDING**.

SO ORDERED this 11th day of July, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATE DISTRICT COURT

cc:  All counsel of record